**NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.**

In the Supreme Court of Georgia

Decided: April 8, 2025

S25A0081. BALLARD v. THE STATE.

COLVIN, Justice.

Appellant Rico Lamar Ballard, who proceeds pro se in this appeal, was convicted of malice murder in connection with the 1995 shooting death of Jason Pitts. See *Ballard v. State*, 268 Ga. 895, 895 & n.1 (494 SE2d 644) (1998). We affirmed his conviction on direct appeal in 1998, see id. at 895, and since then, Appellant has attempted to overturn his conviction, see, e.g., *Ballard v. State*, 304 Ga. 67, 67 (815 SE2d 824) (2018) (remanding for the trial court to dismiss as untimely Appellant's motion and amended motion in arrest of judgment, which were filed in 2014 and 2016, respectively).

This is an appeal from a trial court order denying or dismissing post-conviction motions that Appellant filed in 2022 and 2023. Specifically, Appellant filed a "Motion to Correct a Clerical Error to

Conform to Oral Pronouncement" on June 30, 2022, a "Petition for Exoneration and Discharge; Hearing; Retroactive Grant of First Offender Status" on October 20, 2022, and an extraordinary motion for new trial on May 22, 2023. After the trial court orally denied the pending motions at a hearing on June 29, 2023, Appellant filed a motion to recuse the trial court judge on July 13, 2023, and a "Motion to Correct Clerical Error" on August 24, 2023. On April 25, 2024, the trial court held another hearing on the pending motions and then issued a written order denying or dismissing all of Appellant's pending motions.[1] For the reasons that follow, we affirm the trial court's April 25, 2024 order.

1. Appellant first challenges the trial court's rejection of his petition for retroactive first-offender treatment. As explained below, however, this claim fails.

On October 20, 2022, Appellant filed a petition for retroactive first-offender treatment under OCGA § 42-8-66, seeking

---

[1] Appellant timely appealed. The appeal was docketed to this Court's term beginning in December 2024 and was submitted for a decision on the briefs.

exoneration and discharge. During a June 29, 2023 hearing on Appellant's pending motions, the trial court briefly heard arguments concerning Appellant's petition before orally announcing that it would not sentence Appellant as a first offender. But the court did not memorialize its ruling in writing at that time. On April 25, 2024, the trial court held another hearing on Appellant's pending motions, where the court again briefly heard an argument from Appellant concerning his petition for retroactive first-offender treatment. The court then entered a written order, stating that, to the extent that the court had authority to retroactively treat Appellant as a first offender, the court "decline[d]" to do so because "first offender treatment for murder would be inappropriate."

Under Georgia's First Offender Act, OCGA § 42-8-60 et seq., "a first-time felony offender who enters a guilty plea may be sentenced to probation or confinement before an adjudication of guilt and without entering a judgment of guilt." *Sumrall v. State*, __ Ga. __, __ (1) (910 SE2d 186) (2024) (citation and punctuation omitted). Specifically, the Act provides:

3

When a defendant has not been previously convicted of a felony, the court may, upon a guilty verdict or plea of guilty or nolo contendere and before an adjudication of guilt, without entering a judgment of guilt and with the consent of the defendant, defer further proceedings and:

(1) Place the defendant on probation; or

(2) Sentence the defendant to a term of confinement.

OCGA § 42-8-60 (a) (1) & (2).

OCGA § 42-8-66 authorizes a court to retroactively treat a criminal defendant as a first-time offender under certain circumstances. And as relevant here, that statute provides that, for a defendant to be eligible for retroactive first-offender treatment, the prosecutor must consent to the defendant petitioning the court for such relief, and the defendant must also have been eligible for first-offender treatment when he was sentenced. See OCGA § 42-8-66 (a) (1) (providing that a person "who qualified for [first-offender] sentencing . . . but who was not informed of his or her eligibility for first offender treatment may, *with the consent of the prosecuting attorney*, petition the court" for retroactive first-offender treatment (emphasis supplied)); OCGA § 42-8-66 (d) (providing that the court

4

may grant retroactive first-offender treatment "*if* the court finds by a preponderance of the evidence that *the defendant was eligible for sentencing under the terms of this article at the time he or she was originally sentenced*" (emphasis supplied)).

Appellant contends that the trial court had discretion to grant retroactive first-offender treatment because he was eligible for first-offender treatment when he was sentenced in 1996. And he contends that the trial court failed to exercise that discretion because it did not conduct a hearing on the merits, did not consider the petition on the merits, and improperly rejected the petition based on a "mechanical sentencing formula." As explained below, however, even if Appellant were correct that the trial court did not conduct a hearing on the merits of his petition and rejected the petition without properly considering it on the merits, Appellant has not shown that denying Appellant's request for retroactive first-offender treatment was an abuse of discretion.

We have held that the consent of the prosecuting attorney is a "threshold requirement for petitioning the superior court" for

5

retroactive first-offender treatment. *Sumrall*, __ Ga. at __ (1) (citation and punctuation omitted). As a result, "[w]e have held that a petition for retroactive first-offender treatment is properly rejected by a trial court without a hearing where an appellant fails to demonstrate that the prosecuting attorney consented to the filing of the petition." Id. (affirming the dismissal of a defendant's petition for retroactive first-offender treatment that he filed without first obtaining the prosecuting attorney's consent); *White v. State*, 302 Ga. 69, 69-70 (1), (2) (805 SE2d 25) (2017) (holding that a petition for retroactive first-offender treatment is "properly denied without the need for a hearing" if "the prosecuting attorney . . . did not consent to the filing of the petition").

Here, Appellant did not purport to file his petition for retroactive first-offender treatment "with the consent of the prosecuting attorney," as required by OCGA § 42-8-66 (a) (1). And he does not claim on appeal that the prosecuting attorney consented to him filing that petition. Because Appellant has not demonstrated that he satisfied this threshold requirement, we affirm the trial

6

court's denial of his petition. See *Sumrall*, __ Ga. at __ (1); *White*, 302 Ga. at 69-70 (1), (2).

2. Appellant argues that the trial court abused its discretion in dismissing his extraordinary motion for new trial without considering the motion on the merits. We disagree.

Appellant filed an extraordinary motion for new trial on May 3, 2002, which the trial court denied on May 22, 2003. On May 22, 2023, Appellant filed the extraordinary motion for new trial at issue here, in which Appellant claimed that he had discovered new evidence. The trial court dismissed the motion as impermissibly successive under OCGA § 5-5-41 (b), which provides that "only one such extraordinary motion [for new trial] shall be made or allowed."

On appeal, Appellant contends that newly discovered evidence and a change in the law warranted consideration of his May 22, 2023 extraordinary motion for new trial. And he further asserts that the trial court judge who denied Appellant's first extraordinary motion for new trial "had stricken [that] decision from the record."

We conclude, however, that Appellant has not shown any error

in the trial court's dismissal of his May 22, 2023 extraordinary motion for new trial. The record does not support Appellant's assertion that the trial court struck its May 22, 2003 order denying his first extraordinary motion for new trial. And because Appellant was permitted to file only one extraordinary motion for new trial, the trial court properly dismissed his subsequent extraordinary motion for new trial as impermissibly successive. See *Harris v. State*, 313 Ga. 872, 878 (1) n.4 (874 SE2d 73) (2022) (noting that OCGA § 5-5-41 (b) prohibits a defendant from filing more than one extraordinary motion for new trial). Cf. *Richards v. State*, 275 Ga. 190, 191 n.1 (563 SE2d 856) (2002) (explaining that "the pleading filed by [the] appellant seeking additional appellate review of his conviction cannot be considered an extraordinary motion for new trial since a criminal defendant is statutorily limited to filing one extraordinary motion for new trial (OCGA § 5-5-41 (b)), and [the] appellant [had previously] filed such a motion").

3. Appellant argues that the trial court abused its discretion in dismissing his motions to correct "clerical errors" without

considering them on the merits. We disagree.

In the trial court, Appellant filed two motions that purported to seek correction of "clerical errors" in the record. In a motion filed on November 30, 2022, Appellant asserted that the trial court had authority to correct a written sentence to conform to the sentence orally pronounced, but he did not claim that there were any inconsistencies between the sentence noted on his final disposition and his sentence as orally pronounced. Instead, Appellant argued that his indictment was never properly returned in open court,[2] that the record should be corrected to reflect that fact, and that, as a result, the court should quash or dismiss his indictment as null and void and "immediately releas[e]" him from prison.[3] In a second motion filed on August 24, 2023, which likewise purported to seek

---

[2] See *State v. Brown*, 293 Ga. 493, 493 (1) (748 SE2d 376) (2013) ("For over a century the rule in Georgia has been that a grand jury indictment must be returned into open court." (citation and punctuation omitted)).

[3] Appellant made similar arguments with respect to other purported "clerical errors" in the record. For example, Appellant argued that the court should correct the record and immediately release him because he was found not guilty of murder, his life sentence had been commuted to a first-offender probationary sentence, and, several times between 2008 and 2021, he accepted plea deals reducing his sentence to time served.

correction of a "clerical error," Appellant argued that the record did not show that his indictment was properly filed by the clerk because a file stamp did not appear on the indictment. And he asserted that "the only method to correct this clerical error [was] to dismiss/quash" the indictment. In its written order, the trial court noted that Appellant had not identified a clerical error in his sentence and concluded that, to the extent that Appellant's motions to correct "clerical errors" attempted to challenge his conviction, the motions could not be construed as being one of the recognized vehicles for attacking a criminal conviction. Accordingly, the trial court dismissed the motions.

We conclude that the trial court properly dismissed Appellant's motions to correct "clerical errors." Although those motions purported to seek correction of "clerical errors" in the record, the substance of the motions revealed that Appellant was not seeking to correct errors of a clerical nature, such as typographical mistakes or omissions of words, sentences, or paragraphs. See *Tremble v. Tremble*, 288 Ga. 666, 668-669 (1) (706 SE2d 453) (2011) (describing

10

prototypical examples of "clerical mistakes"). Instead, Appellant asked the court to substantively modify the record and then, based on its modifications to the record, issue an order dismissing his indictment, voiding his sentence, and releasing him from prison. See *Porter-Martin v. Martin*, 280 Ga. 150, 150-151 (625 SE2d 743) (2006) (contrasting a "substantive correction," such as a change to a trial court's finding of fact, with a correction of a "clerical mistake"). In other words, Appellant's motions to correct "clerical errors" were in fact motions challenging his conviction.

As the trial court correctly recognized, however, Appellant's motions to correct clerical errors were procedurally improper vehicles for challenging his conviction. The four "traditionally recognized" vehicles for "challeng[ing] a criminal conviction" are "a direct appeal of the conviction[,] an extraordinary motion for new trial, a motion in arrest of judgment, or a petition for habeas corpus." *Nazario v. State*, 293 Ga. 480, 488 (2) (d) (746 SE2d 109) (2013). Because we do not construe Appellant's motions purporting to seek correction of "clerical errors" as any of these four recognized vehicles

for challenging a criminal conviction, we affirm the trial court's dismissal of those motions. See *Smith v. State*, 298 Ga. 487, 487-488 (782 SE2d 17) (2016) (affirming a trial court's rejection of a post-conviction motion that could not be construed as a proper and timely vehicle for challenging a criminal conviction).

4. Appellant argues that the trial court judge presiding over his post-conviction motions abused his discretion in denying Appellant's motion to recuse the judge. We disagree.

Following the June 29, 2023 hearing, Appellant filed a motion to recuse the trial court judge based on statements the judge had made at the hearing. In its April 25, 2024 order, the trial court summarily denied Appellant's motion to recuse along with "[a]ll of [Appellant's other] pending motions not specifically mentioned" in the order.

"We review a trial court's ruling on a recusal motion for an abuse of discretion." *Pierce v. State*, 319 Ga. 846, 863 (9) (907 SE2d 281) (2024). Disqualification is required only where, among other things, "an alleged bias . . . stem[s] from an extra-judicial source and

result[s] in an opinion on the merits on some basis other than what the judge learned from his participation in the case." Id. at 863-864 (9) (citation and punctuation omitted).

On appeal, Appellant argues that the judge should have recused himself because the judge's statements during the June 29, 2023 hearing on Appellant's pending motions revealed a bias against Appellant. Specifically, Appellant points to the following statements made by the judge: "I don't think the law favors first offender treatment in murder cases"; "I may have the discretion [to treat Appellant as a first offender, but] that doesn't mean [I] have to do it"; "I have the discretion, but I'm not going to use it. So I'm not going to sentence you as a first offender"; "I've never given a first offender in a murder case, and I don't believe this is appropriate"; "I don't have discretion to exonerate you"; and "I've never heard of that [case referred to by Appellant saying the court had discretion to exonerate him]."[4]

---

[4] Appellant does not argue that the judge should have referred the recusal motion to another judge. See *Daker v. State*, 300 Ga. 74, 78 (3) (792

13

Here, Appellant has not pointed to any comment made by the trial court judge showing that the judge had a personal bias against Appellant. Most of the comments highlighted by Appellant simply communicated the judge's understanding of the law and what the law permitted or required. For example, the judge said, "I don't think the law favors first offender treatment in murder cases"; "I have the discretion [to sentence Appellant as a first offender]"; "I may have the discretion [to treat Appellant as a first offender, but] that doesn't mean [I] have to do it"; "I don't have discretion to exonerate you"; and "I've never heard of that [case referred to by Appellant saying the court had discretion to exonerate him]." Appellant argues that some of these comments about the law were inaccurate. But regardless of their accuracy, they did not suggest that the judge harbored a bias against Appellant.

Appellant also highlights the judge's comment that the judge had "never given a first offender [sentence] in a murder case." But

SE2d 382) (2016) (describing the conditions under which a "trial court must refer the motion [to recuse] to another judge" (citation and punctuation omitted)).

14

Appellant has not shown that this comment, which simply stated a fact about the judge's past experience, was motivated by, or reflected, any bias against Appellant.

And the remaining comments highlighted by Appellant — that the court "d[id not] believe [first-offender treatment was] appropriate" for Appellant, who had been convicted of murder, and that the court therefore was "not going to use" his discretion "to sentence [Appellant] as a first offender" — were only expressions of the court's ruling on Appellant's motion, which were later memorialized in the court's written order. Although the court's ruling was adverse to Appellant, "[j]udicial rulings adverse to a party are not disqualifying" as a general matter. *Mondy v. Magnolia Advanced Materials, Inc.*, 303 Ga. 764, 779 (5) (815 SE2d 70) (2018). See *Barnett v. State*, 300 Ga. 551, 555 (2) (796 SE2d 653) (2017) ("[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion." (citation and punctuation omitted)). And here, Appellant has not explained why the court's judgment that Appellant should not be retroactively sentenced as a first offender

15

due to the nature of his offense demonstrated a personal bias against Appellant or a bias stemming from an extra-judicial source. See *Pierce*, 319 Ga. at 864 (9) (holding that the appellant had not shown an abuse of discretion in denying his recusal motion where the appellant "ha[d] not pointed us to any testimony suggesting that the trial judge had a bias toward [the appellant], much less a bias toward [the appellant] stemming from some extra-judicial source").

5. Appellant argues that the trial court's decision to reduce to writing its June 29, 2023 oral rulings on Appellant's pending motions without first "providing a new hearing" where Appellant could "reargue his motions" conflicted with our decision in *Titelman v. Stedman*, 277 Ga. 460 (591 SE2d 774) (2003). This claim lacks merit.

As noted above, the trial court held a hearing on June 29, 2023, where the court heard arguments on Appellant's pending motions and orally denied those motions. On April 25, 2024, the trial court held another hearing on Appellant's pending motions, where Appellant briefly argued some of his motions again and the State

16

discussed the need for the court to reduce its rulings to writing. That same day, the trial court issued the written order at issue on appeal, which dismissed or denied all of Appellant's pending motions.

Assuming without deciding that the trial court did not hold a second hearing on Appellant's motions because the court did not give Appellant a meaningful opportunity to reargue his motions at the April 25, 2024 hearing, Appellant has not shown that the trial court's failure to hold a second hearing on his motions conflicted with our decision in *Titelman*. In *Titelman*, we explained that, as a general matter, an oral order must be reduced to writing before it can be appealed. See *Titelman*, 277 Ga. at 461 ("[I]t is elementary that an oral order is not final nor appealable until and unless it is reduced to writing, signed by the judge, and filed with the clerk." (citation and emphasis omitted)). And we held that "mandamus is appropriate . . . to compel the trial court to enter a written order [memorializing an oral judgment] from which an appeal can be taken." Id. at 462. Contrary to Appellant's argument, *Titelman* did not announce a rule requiring a trial court to hold a hearing on a

17

pending motion, much less hold that a trial court is required to hold a *second* hearing on the pending motion. Accordingly, this claim fails.[5]

*Judgment affirmed. Peterson, CJ, Warren, PJ, and Bethel, Ellington, McMillian, LaGrua, and Pinson, JJ, concur.*

---

[5] To the extent that Appellant contends that the trial court's failure to reduce its June 29, 2023 oral rulings to writing conflicted with *Titelman*, that claim also fails because, as noted above, the court issued a written order memorializing its rulings on April 25, 2024.